Louis J. Ebert (Bar No. 17527)
Rosenberg Martin Greenberg, LLP
25 South Charles Street, Suite 2115
Baltimore, MD 21201
(410) 649-4995

Attorneys for RL BB ACQ III-MD SHP, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| In re: | * |
| | * |
| LAMEES ALROMANI, | * Case No. 16-13854 |
| | * |
| Debtor. | * (Chapter 7) |
| | * |

*************************************************************************

| | |
|---|---|
| RL BB ACQ III-MD SHP, LLC | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| LAMEES ALROMANI | * Adversary No. |
| | * |
| Defendant/Debtor. | * |

*************************************************************************

### COMPLAINT OF RL BB ACQ III-MD SHP, LLC
### TO DETERMINE DISCHARGEABILITY OF DEBT

RL BB ACQ III-MD SHP, LLC ("Rialto"), assignee of RL BB Acquisition, LLC, by its undersigned attorney and pursuant to Sections 523(a)(2), 523(a)(4) and 523(a)(6) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 4007 and 7001 of the Federal Rules of Bankruptcy Procedure, hereby files this Complaint for a determination that certain debts, fully

described below, owed by Lamees Alromani (the "Debtor") to Rialto are not dischargeable. In support, Rialto respectfully states as follows:

## Parties

1.  Rialto is a limited liability company organized in the State of Maryland with offices at 790 NW 107th Avenue, Suite 400, Miami, Florida 33172.

2.  The Debtor is an individual and resident of the Commonwealth of Virginia, whose address is 8901 Gallant Green Drive, McLean, Virginia 22102.

## Jurisdiction

3.  On November 10, 2016 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code commencing the above-captioned bankruptcy case.

4.  The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), 157(b)(1), and 157(b)(2)(I). Venue properly lies in this district by virtue of 28 U.S.C. § 1409(a).

5.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

## Background

6.  In or around 2007, Silver Hill Properties, LLC (the "Borrower") requested that Rialto's predecessor in interest, Branch Banking and Trust Company ("BB&T") extend it a loan (the "Loan").

7.  Prior to agreeing to extend the Loan, BB&T required that the Borrower and various related parties that were to serve as guarantors (together, the "Obligors"), which included both the Debtor and her husband Ali Al Attar ("Attar"), demonstrate their financial ability to service the Loan.

8.  In order to satisfy this requirement, the Debtor and her husband provided various documents and made various representations to BB&T. BB&T determined that the Debtor and Attar had assets valued in excess of $9 million dollars in or around February 2006 based upon the Debtor and Attar's representations and based upon BB&T's independent investigations.

9.  Once satisfied that the Obligors were credit worthy, BB&T and the Obligors entered into a Loan Agreement dated February 20, 2007 (the "Loan Agreement"). A true and accurate copy of the Loan Agreement is attached hereto as Exhibit A and incorporated by reference herein.

10. Pursuant to the terms of the Loan Agreement, the Debtor, and the other Obligors, represents and warrant that "all financial statements provided . . . to [BB&T] . . . are true and correct and fairly represent [the Debtor's] financial condition as of the dates thereof." Loan Agreement at 2.01.

11. The Debtor, and the other Obligors, further represents and warrants that she would "[c]omply in all respects with all applicable laws . . . including, without limitation, paying before the delinquency of all taxes, assessments and governmental charges imposed or assessed upon [Debtor] or upon [Debtor's] property." Loan Agreement at 4.03.

12. The Loan is evidenced by a Promissory Note in the original principal amount of $2,625,000.00 dated February 20, 2007 ( as amended, the "Note"), as subsequently modified and amended by a Note Modification Agreement, dated March 10, 2009, a Note Modification Agreement, dated July 23, 2009, and a Note Modification Agreement, dated October 19, 2009. True and accurate documents making up the Note are attached collectively hereto as Exhibit B and incorporated by reference herein.

13. In order to induce BB&T to extend the loan, the Debtor, along with Attar agreed

to guaranty the obligations of the Borrower.  The Debtor's agreement to do so was memorialized in a Guaranty Agreement dated February 20, 2007 (the "Debtor Guaranty" and together with the Loan Agreement, the Note and any and all other documents executed in connection therewith, or related thereto, the "Loan Documents").  A true and accurate copy of the Debtor Guaranty is attached hereto as <u>Exhibit C</u> and incorporated by reference herein.

14.  Pursuant to the terms of the Debtor Guaranty, the Debtor absolutely and unconditionally guaranteed the payment and performance of the Borrower's obligations under the Note.

15.  The Obligors defaulted under the terms of the Loan Documents when, among other things, they failed to pay the entire loan balance upon maturity on January 19, 2010.

16.  As a result of the foregoing defaults, on June 30, 2010 BB&T filed suit and reduced its claim to judgment (the "Maryland Judgment") against each of the Obligors in the case captioned *Branch Banking and Trust Company vs. Silver Hill Properties, LLC et. al.,* case number 08-C-10002103 in the Circuit Court for Charles County Maryland.

17.  BB&T assigned the Loan Documents and the Maryland Judgment to RL BB Acquisition, LLC in 2011.  RL BB Acquisition, LLC assigned the Loan Documents and the Maryland Judgment to Rialto in 2012.

18.  On July 27, 2012, Rialto recorded the Maryland Judgment in the Circuit Court of the County of Fairfax Virginia against the Obligors, including the Debtor, in the amount of $3,062,162.47 as Judgment Docket Number 520576 (the "Judgment").

19.  On March 28, 2012 the Grand Jury for the District of Maryland entered an Indictment (the "Indictment") against Attar and another Obligor in the case captioned *United States v. Abdul H. Fadul, and Ali Al-Attar*, criminal case no. DKC 12 CR 0171 (the "Criminal

Case") in the United States District Court for the District of Maryland. A true and correct copy of the Indictment is attached hereto as <u>Exhibit D</u> and incorporated by reference herein.

20. According to the Indictment, Attar deposited income into his and the Debtor's bank accounts at several times between tax years 2004 and 2006 in an attempt to defraud the IRS and subsequently caused to be filed false and fraudulent tax returns on behalf of Attar and the Debtor.

21. The Loan would not have been extended to the Borrower with the Debtor's Guaranty as part of the collateral if the allegations set forth in the Indictment were known at the time.

22. The Loan would not have been extended to the Borrower with the Debtor's Guaranty as part of the collateral without the representations of the Debtor regarding her financial condition at the time.

## COUNT I
## 11 U.S.C. § 523(a)(2)(A)

23. Each and every allegation contained in the foregoing paragraphs is incorporated by reference as if fully set forth herein.

24. 11 U.S.C. § 523 provides that a discharge under § 727 of the Bankruptcy Code does not discharge a debtor for any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by "false pretenses, a false representiation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. §523(a)(2)(A).

25. The Debtor knowingly and intentionally: (1) made false representations and; (2) omitted material facts to BB&T in order to deceive it into extending the Loan.

26. Prior to the extension of the Loan, the Debtor was aware of the criminal actions of

-5-

Attar and, upon information and belief, the potential investigation regarding same.

27. Notwithstanding the foregoing, the Debtor failed to inform BB&T of these criminal acts and affirmatively stated that she was in compliance "with all applicable laws" as set forth in the Loan Agreement.

28. The Debtor knew that these representations were false when made and further knew that her omissions created a false impression and that she was under a duty to disclose the omitted information.

29. The Debtor made the false representations and omitted the material facts with the intention of deceiving BB&T in order to obtain the Loan for the Borrower.

30. BB&T justifiably relied on these false representations and omissions when it agreed to extend the loan. BB&T was not aware at the time of the extension of the Loan of the allegations set forth in the Indictment and justifiably relied on the representations set forth in the Loan Agreement regarding the Debtor's compliance with laws.

31. As a direct result of the Debtor's fraud, BB&T extended the Loan which was never fully repaid and would not have been extended in the first place, nor subsequently reduced to the Judgment, had the false representations never been made and/or the omissions never occurred.

32. Therefore, as a proximate result of the Debtor's false representations and material omissions, RL BB has suffered damage as the Debtor is now indebted to it due to her false representations and material omissions.

**WHEREFORE**, for the foregoing reasons, Plaintiff RL BB ACQ III-MD SHP, LLC, assignee of RL BB Acquisition, LLC respectfully request the following relief:

A. That the Court enter an order determining that the Judgment and/or any other debt

relating to the Loan is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A); and

    B.    That RL BB be granted such other and further relief as is just and equitable.

## COUNT II
## 11 U.S.C. § 523(a)(2)(B)

33.    Each and every allegation in the foregoing paragraphs is incorporated by reference as if fully set forth herein.

34.    BB&T would not have extended the Loan to the Borrower except for its reliance on the financial statements and other written materials submitted by the Debtor regarding her financial condition.

35.    Therefore, the Debtor would not be currently indebted to RL BB as set forth in the Judgment if she had not provided false financial statements and other written materials to BB&T.

36.    The financial statements and other written materials submitted by the Debtor to BB&T were statements in writing regarding the Debtor's financial condition which were materially false because, among other things, such falsely inflated income.

37.    BB&T reasonably relied upon the financial statements and other written materials submitted by the Debtor in determining that it should extend the Loan to the Borrower.

38.    The Debtor published and provided the financial statements and other written materials to BB&T with the intent to deceive BB&T into believing that she had more assets than she actually did.

39.    The Debtor engaged in this deception in order to cause BB&T to extend the Loan. As a direct result of the Debtor's fraud, BB&T extended the Loan which was never repaid.

40.    Therefore, as a proximate result of the Debtor's false written representations, RL BB has suffered damage as the Debtor is now indebted to it due to her false written representations.

**WHEREFORE**, for the foregoing reasons, Plaintiff RL BB ACQ III-MD SHP, LLC, assignee of RL BB Acquisition, LLC respectfully request the following relief:

A.  That the Court enter an order determining that the Judgment and/or any other debt relating to the Loan is not dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B); and

B.  That RL BB be granted such other and further relief as is just and equitable.

Respectfully submitted,

Dated: April 10, 2017

/s/ Louis J. Ebert
Louis J. Ebert (Bar No. 17527)
Rosenberg Martin Greenberg, LLP
25 South Charles Street, Suite 2115
Baltimore, MD 21201
(410) 649-4995

*Attorneys for RL BB ACQ III-MD SHP, LLC*